UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Olga L. Gordon, Trustee for the
Chapter 7 Estate of Licka Hosch,
     Appellant and Cross-Appellee

     v.                                  Case No. 16-cv-307-SM
                                              Opinion No. 2017 DNH 050
Envoy Mortgage, Ltd.,
     Appellee and Cross-Appellant

## O R D E R

This is a consolidated appeal and cross-appeal from a
decision by the United States Bankruptcy Court for the District
of New Hampshire granting the motion of Appellee and Cross-
Appellant, Envoy Mortgage Ltd. ("Envoy"), to dismiss the
complaint filed by the Chapter 7 Trustee for the Estate of Licka
Hosch.  For the reasons discussed, the bankruptcy court's
decision is affirmed in all respects.  The Trustee's motion to
certify a question of law to the New Hampshire Supreme Court is
denied.

### Standard of Review

The parties agree that this is a "core" proceeding under
28 U.S.C. § 157(b)(2).  Accordingly, this court reviews the
bankruptcy court's conclusions of law de novo.  Its factual

findings are, however, entitled to deference and are reviewed for clear error.  See Sheridan v. Michels (In re Sheridan), 362 F.3d 96, 100 (1st Cir. 2004); White v. Gordon, 558 B.R. 15, 18 (D.N.H. 2016); Bates v. CitiMortgage, Inc., 550 B.R. 12, 16 (D.N.H.), aff'd, 844 F.3d 300 (1st Cir. 2016).

### Background

The Bankruptcy Court's factual findings are not in dispute. In November of 2013, in connection with the purchase of real estate in Hudson, New Hampshire (the "Property"), Licka Hosch executed a promissory note to Envoy, secured by a mortgage deed to the Property.  Hosch defaulted on her obligations under the note and, on July 30, 2015, Envoy conducted a foreclosure sale, at which it was the high bidder.

On August 27, 2015 – before Envoy recorded a foreclosure deed – Hosch sought bankruptcy protection by filing a Chapter 13 petition.  Under precedent of the bankruptcy court for this district, Envoy was required to obtain relief from the automatic stay before recording the foreclosure deed.  See In re Beeman, 235 B.R. 519, 526 (Bankr. D.N.H. 1999).  Accordingly, on September 22, 2015, Envoy filed a motion seeking relief from the automatic stay.

On October 6, 2015, before the bankruptcy court ruled on the motion for relief from the stay, Hosch moved the bankruptcy court to convert her case to a Chapter 7 proceeding. That motion was granted and the Trustee was appointed. The following day, the Trustee recorded in the registry of deeds a notice asserting her rights as a lien creditor against the Property under the provisions of 11 U.S.C. § 544.[1]

On October 14, 2015, in the absence of any objection, the bankruptcy court granted Envoy's motion for relief from stay in a form order. But, pursuant to Federal Bankruptcy Rule of Procedure 4001(a)(3), it stayed the effect of that order for another 14 days. Finally, on November 3, 2015 - 96 days after the foreclosure sale, 28 days after the case was converted to a Chapter 7 proceeding, and six days after the expiration of the stay imposed by Rule 4001(a)(3) - Envoy recorded the foreclosure deed in the registry of deeds.

In December of 2015, the Trustee commenced an adversary proceeding, in which she advanced three claims against Envoy:

---

[1]   By order dated September 29, 2016, the court granted the parties' assented-to motion to amend the caption in this case, in recognition of the fact that the original Trustee, Mark P. Connell, had been replaced by a new Trustee, Olga L. Gordon. For ease of reading, the court will use feminine pronouns throughout this order when referring to the Trustee.

> In Counts I and II, the Trustee seeks a declaratory
> judgment pursuant to 11 U.S.C. § 544(a)(1) and/or
> (a)(2) that the Trustee has a first position lien on
> the Property that is superior to Envoy's ownership
> interest by virtue of [her] intervening lien and
> Envoy's untimely recordation of the foreclosure deed
> and affidavit. . . . [I]n Count III, which is framed
> in terms of disallowance of a secured claim pursuant
> to 11 U.S.C. § 506(a)(1), the Trustee essentially
> requests a declaration that "Envoy's status as the
> mortgage holder merged, under the Common Law Doctrine
> of Merger, with [its] ownership interest in the
> property" such that the estate's interest in the
> Property has priority over Envoy's ownership interest.

Bankruptcy Order at 9 (document no. 2 at 83).  Envoy moved to

dismiss all three of the Trustee's claims, asserting that it

timely recorded the foreclosure deed and, therefore, took title

to the Property free and clear of all encumbrances which did not

have priority over its mortgage, including the Trustee's lien.

Alternatively, Envoy asserted that even if it recorded the

foreclosure deed late, the effect of an untimely recording would

merely render the foreclosure sale void as to the Trustee.  But,

said Envoy, its mortgage would remain in place, with priority

over the subsequently-recorded Trustee's lien.


    The Bankruptcy court held that: (1) Envoy failed to record

the foreclosure deed in a timely manner, but (2) "Envoy's

mortgage was not extinguished by the recording of the

foreclosure deed under the doctrine of merger."  Bankruptcy

Order at 19.  Accordingly, the bankruptcy court concluded that, "Envoy's mortgage remains unforeclosed and senior in priority to the Trustee's asserted lien rights."  Id.  The bankruptcy court then held that the Trustee's complaint failed to state any viable claims and it granted Envoy's motion to dismiss.

On appeal, the parties advance two arguments.  The Trustee asserts that the foreclosure sale and subsequent (though untimely) recording of the foreclosure deed were effective to transfer title to the Property to Envoy, but subject to the Trustee's rights as a priority lien creditor.  According to the Trustee, when Envoy eventually recorded its foreclosure deed, it took title to the property and its mortgage "merged" with its fee interest.  And, because Envoy recorded that foreclosure deed beyond the statutorily prescribed time (i.e., "late"), New Hampshire's foreclosure statute provides that the Trustee's intervening lien was not extinguished.  So, says the Trustee, the bankruptcy court erred in concluding that Envoy's mortgage remains a valid encumbrance on the Property, superior to her lien.

Envoy, on the other hand, does not take issue with the bankruptcy court's conclusion that its mortgage is superior to the Trustee's lien, but it does assert that the bankruptcy court

erred in concluding that it failed to record its foreclosure deed in a timely manner (and, therefore, must conduct a new foreclosure sale to extinguish the Trustee's lien and take clear title to the Property).

## Discussion

I.    Governing Law.

Under New Hampshire law, a mortgagee that has exercised the statutory power of sale must record a foreclosure deed (along with a copy of the notice of sale and a foreclosure affidavit) in the appropriate registry of deeds within 60 days of the foreclosure sale.  N.H. Rev. Stat. Ann. ("RSA") 479:26, I. There is, however, a "safe harbor" provision which provides that, "If such recording is prevented by order or stay of any court or law or any provision of the United States Bankruptcy Code, the time for such recording shall be extended until 10 days after the expiration or removal of such order or stay." Id.  Upon recording the foreclosure deed, the statute provides that "title to the premises shall pass to the purchaser free and clear of all interests and encumbrances which do not have priority over such mortgage."  RSA 479:26, III.

Finally, the statute addresses (or attempts to address) the situation in which a foreclosure deed is <u>not</u> timely recorded, providing:

> Failure to record said deed and affidavit within 60 days after the sale shall render the <u>sale void</u> and of no effect <u>only as to liens</u> or other encumbrances of record with the register of deeds for said county <u>intervening</u> between the day of the sale and the time of the recording of said deed and affidavit.

RSA 479:26, II (emphasis supplied).  Here, the parties disagree as to the legal consequences that follow when a mortgagee fails to record a foreclosure deed in a timely manner and, prior to recordation but after the foreclosure sale, an intervening lien has attached to the property.

II.  <u>The Foreclosure Deed was Untimely Recorded</u>.

The bankruptcy court reasoned that even if Envoy was required to seek relief from the automatic stay when the debtor/mortgagor initially sought Chapter 13 protection, the "stay terminated on October 6, 2015, upon the conversion of the case to Chapter 7."  Bankruptcy Order at 13.[2]  Accordingly, the

---

[2]   A lengthy discussion of the applicable bankruptcy precedent is not necessary to resolve the pending disputes.  Nor, importantly, has either party asked this court to resolve any questions about the validity of that precedent.  It is sufficient to note that existing precedent (although subject to some criticism) seems to require a mortgagee to obtain relief from the automatic stay before recording a foreclosure deed

bankruptcy court held that Envoy was required to record its foreclosure deed within ten days of the date on which the case was converted to Chapter 7 — that is, on or before October 16. See RSA 479:26, I (the "safe harbor" provision).  And, because Envoy did not record its foreclosure deed until November 13, the bankruptcy court concluded that it was untimely under the statute.

But, says Envoy, if its pending motion for relief had been rendered moot by virtue of the conversion of the debtor's case to a Chapter 7 proceeding, the bankruptcy court would not have (or should not have) ruled on the merits of the motion.  Yet, it did.  Consequently, Envoy asserts that it properly waited until the bankruptcy court ruled on its motion and then timely recorded the foreclosure deed within ten days of the effective date of the order, as permitted by RSA 479:26, I.

---

when, subsequent to the foreclosure sale, the mortgagor has filed a Chapter 13 petition.  See In re Beeman, 235 B.R. 519, 526 (Bankr. D.N.H. 1999).  But see TD Bank, N.A. v. LaPointe, 505 B.R. 589 (B.A.P. 1st Cir. 2014) (criticizing the holding in Beeman).  It is, however, plain that in the context of a Chapter 7 bankruptcy, the automatic stay does not apply and, therefore, the foreclosing mortgagee need not seek relief prior to recording a foreclosure deed.  See In re Hazleton, 137 B.R. 560 (Bankr. D.N.H. 1992).

The bankruptcy court considered, but rejected, that argument.  In construing the scope and import of its own order granting Envoy's motion for relief from the automatic stay, the bankruptcy court noted that despite the fact that the case had been converted to a Chapter 7 proceeding, Envoy still needed relief from the automatic stay to perform some of the acts referenced in its motion.  Specifically, the court pointed out that Envoy's motion for relief sought not only authorization to record the foreclosure deed, but also permission to commence eviction proceedings against the debtor.  See Bankruptcy Order at 14 (noting that Envoy stated that it wished to "avail itself of other State Law Remedies" including, for example, "pursuing the eviction of the Debtor") (quoting Envoy's Motion for Relief from the Automatic Stay).  And, regardless of whether the debtor's case was proceeding under Chapter 7 or Chapter 13, Envoy needed relief from the stay to begin eviction proceedings. Bankruptcy Order at 14.  So, the analysis goes, Envoy's motion for relief from the automatic stay did not become entirely moot by virtue of the conversion to Chapter 7.

The bankruptcy court held that when it granted relief from the automatic stay, it was merely authorizing Envoy to pursue whatever state law remedies it might have against the debtor arising out of the foreclosure process (including eviction

proceedings); it was not addressing Envoy's ability to record the foreclosure deed, since that issue had been resolved upon the conversion to a Chapter 7 proceeding.  Id. at 15 (holding that its order granting Envoy's motion for relief did "no more than lift the stay to the extent the stay actually applied on October 14, 2015.  To the extent that the stay did not apply to certain acts identified in the Motion for Relief, the court was not required to render an advisory verdict").  The bankruptcy court's interpretation of the intent and effect of its own order cannot be said to constitute an error of law.

Finally, Envoy seems to suggest that despite the conversion of the debtor's case to a Chapter 7 proceeding, it still needed relief from the automatic stay before recording the foreclosure deed, because the Trustee had recorded a lien against the Property – a lien that would have been extinguished had Envoy timely recorded the foreclosure deed.  According to Envoy:

> [T]he Trustee's Asserted § 544 Lien itself became property of the estate protected by the automatic stay.  See 11 U.S.C. § 541(a)(7) (including within the definition of property of the estate "any interest in property that the estate acquires after the commencement of the case.").  Accordingly, were Envoy to record its foreclosure deed and thereby extinguish the Trustee's Asserted § 544 Lien absent stay relief, it would have "exercise[d] control over property of the estate" in violation of the automatic stay.  11 U.S.C. § 362(a)(3).

Envoy's Reply Brief (document no. 29) at 3.  Envoy raises an
interesting point.  There are, however, several problems with
it.  First, it does not appear that Envoy presented that
argument to the bankruptcy court and, therefore, it seems not to
have been properly preserved on appeal.  See Envoy's Motion to
Dismiss at 6 (document no. 2 at 26).  Additionally, even if that
issue had been properly preserved, Envoy's argument is not
developed or adequately briefed.  Among other things, Envoy
invokes no legal precedent (whether binding or merely
persuasive) to support its position.  See Envoy's Appellate
Brief (document no. 23) at 22; Envoy's Reply Brief (document no.
29) at 3.  Nor does Envoy discuss why the issue is not governed
by the holding in Hazelton (in which the bankruptcy court held
that a foreclosing mortgagee need not seek relief from the
automatic stay in order to record its foreclosure deed).  Given
these circumstances, the court declines to address Envoy's
argument and deems it forfeited.  See, e.g., Hannon v. ABCD
Holdings, LLC (In re Hannon), 839 F.3d 63, 70 (1st Cir. 2016);
Noonan v. Rauh (In re Rauh), 119 F.3d 46, 50–51 (1st Cir. 1997).


    The bankruptcy court's conclusion that Envoy's foreclosure
deed was not timely recorded under New Hampshire's foreclosure
statute is affirmed.

III. <u>RSA 479:26 and The Merger Doctrine</u>.

    A.   <u>The Trustee Properly Preserved Her Issues for Appeal</u>.

    As a preliminary matter, Envoy asserts that the Trustee failed to properly raise/preserve the argument she now urges in her appeal - that is, whether New Hampshire law permits Envoy to "re-foreclose" on the Property, having already foreclosed its mortgage and then recorded a foreclosure deed, albeit in an untimely manner.  The court disagrees.

    The Trustee frames the issue in a somewhat odd manner, since the bankruptcy court addressed it as a question of lien priority, and did not specifically discuss Envoy's ability to re-foreclose its mortgage.  Nevertheless, it is plain that the Trustee did present her "re-foreclosure" argument to the bankruptcy court.  <u>See, e.g.</u>, Bankruptcy Order at 12 ("[T]he Trustee asserts that the effect of Envoy's recording of the foreclosure deed was . . . to merge its mortgage interest and ownership interest into a unified title. . . . [The Trustee argues that] Envoy's <u>mortgage was extinguished</u> and now <u>cannot be re-foreclosed</u> as to the Trustee's intervening lien rights.") (emphasis supplied).  The issue has, therefore, been properly preserved for appeal.

B.    <u>The Trustee's Arguments on Appeal</u>.

The Trustee asserts that when Envoy recorded its

foreclosure deed, RSA 479:26, II, dictated that Envoy took title

to the Property, subject to the Trustee's intervening § 544

Lien.  And, says the Trustee, Envoy cannot extinguish that lien

by "re-foreclosing" its mortgage.  In support of her position,

the Trustee advances two arguments.  First, she asserts that

upon unification of Envoy's equitable interest in the property

(its mortgage) with legal title to the property (via recordation

of the foreclosure deed), the equitable interest merged into the

legal interest and the mortgage was extinguished.  Consequently,

says the Trustee, that mortgage cannot be "re-foreclosed."

Next, the Trustee relies upon what she claims is the proper

interpretation of RSA 479:26, II, which, she says, operates to

"punish" purchasers at foreclosure sales should the mortgagee

record the foreclosure deed beyond the time provided by statute.

According to the Trustee, that "punishment" takes the form of

forcing the purchaser at the foreclosure sale to take title to

the property subject to any intervening liens.


The Trustee's latter argument is based upon a 1992

amendment to RSA 479:26, II, which altered three words in the

statute.  Prior to the amendment, the statute provided:

> Failure to record said deed and affidavit within the
> statutory period shall render the sale void and of no
> effect <u>if there are</u> liens or other encumbrances of
> record with the register of deeds for said county
> intervening between the day of the sale and the time
> of recording of said deed and affidavit.

RSA 479:26, II (1971) (emphasis supplied).  As amended in 1992,

the statute currently provides:

> Failure to record said deed and affidavit within 60
> days after the sale shall render the sale void and of
> no effect <u>only as to</u> liens or other encumbrances of
> record with the register of deeds for said county
> intervening between the day of the sale and the time
> of recording of said deed and affidavit.

RSA 479:26, II (1992).  The Trustee argues that the amendment

not only changed more than 150 years of established common law

related to the doctrine of merger, but it also imposed a new

"penalty" upon all purchasers at foreclosure sales whenever the

mortgagee fails to record the foreclosure deed in a timely

manner under the statute.  The bankruptcy court properly

rejected those arguments.


As the bankruptcy court observed when addressing the

Trustee's views about merger and the proper interpretation of

RSA 479:26, it was not "writ[ing] on a blank slate."  Bankruptcy

Order at 16.  More than twenty years ago, this court (DiClerico,

J.) considered, and resolved, precisely those questions.  <u>See</u>

FDIC v. Holden, No. 92-cv-455-JD, 1994 WL 263691 (D.N.H. Jan. 26, 1994).  But, counters the Trustee, Holden was wrongly decided, and the bankruptcy court erred in relying upon it.  The court disagrees.

In Holden, the FDIC foreclosed its mortgage but, before it recorded the foreclosure deed, a third party - Holden - recorded an encumbrance against the property, in the form of a mortgage. When the FDIC failed to record its foreclosure deed in a statutorily timely manner, Holden began foreclosure proceedings on her mortgage.  The FDIC obtained a preliminary injunction, enjoining the foreclosure.  The parties then moved for summary judgment, each invoking RSA 479:26 and arguing that its lien had priority over the other's.  Alternatively, argued Holden, the FDIC's mortgage was extinguished by the doctrine of merger.  The court disagreed with both of Holden's arguments and held "as a matter of law that the mortgage of the FDIC is senior in interest to [Holden's] mortgage pursuant to RSA 479:26, II." Id. at *6.

Judge DiClerico's opinion in Holden is thoughtful, thorough, and persuasive.  It need not be recounted in detail. It is sufficient to note a few things.  First, by way of

background, the court observed that before the 1992 amendments
to RSA 479:26,

> if there were intervening interests on record, a sale
> of property would be void _ab initio_ if the foreclosure
> deed was recorded after the statutory period.  For
> title to pass under these circumstances, the seller
> was required to foreclose the mortgage again so that
> formal notice would be issued to those with
> intervening interests.

Holden, 1994 WL 263691 at *2 (emphasis supplied).  In other
words, before the 1992 amendments, the untimely recording of a
foreclosure deed rendered the sale void as to all lien holders
(if any liens had been recorded after the sale); title did not
pass to the high bidder upon the untimely recordation of the
foreclosure deed; and to properly exercise the statutory power
of sale, the mortgagee had to re-initiate the entire foreclosure
process.  Thus, the statute plainly contemplated that the
mortgagee would "re-foreclose" the mortgage.  Under the statute
as presently written, however, title to the underlying property
does pass upon the untimely recording of the foreclosure deed,
but the foreclosure sale is "void and of no effect" with respect
to intervening liens attaching to the property after the sale,
but before the foreclosure deed is recorded.  As was the case in
Holden, the question presented here is: What does that mean?

The Holden court reasoned that because the foreclosure sale was void as to Holden's intervening mortgage, "it is reasonable to conclude from the plain meaning of the statutory language that the status quo existing just prior to the foreclosure sale remains, namely, that the FDIC has a mortgage interest that is unforeclosed as to Holden's intervening mortgage and it is senior to Holden's mortgage because it was recorded prior thereto." Id. at 3.  The court went on to note:

> The foreclosure sale was "void and of no effect" as to the Holden mortgage.  Therefore, the recording of the foreclosure deed did not extinguish the FDIC's mortgage because that mortgage was unforeclosed as to the Holden mortgage.  Stated another way, the foreclosure deed could not have its usual legal effect (i.e., extinguishing a mortgage) when the statute declares a condition precedent to that effect (i.e., the foreclosure sale) to be "void and of no effect." Furthermore, the recording of the foreclosure deed did not alter the position of the FDIC's mortgage as senior to Holden's mortgage, a fact established by their recording dates.

Id.

The court then discussed, in detail, Holden's contention that when the FDIC recorded the foreclosure deed, its equitable interest in the property (the mortgage) merged into its legal interest in the property (fee title) and, therefore, the mortgage was extinguished and could not be "re-foreclosed." Parenthetically, and by way of background, it should be noted

that the common law merger doctrine, in its most general terms, provides that:

> [W]hen two consecutive estates in land are held by the same person, the estates coalesce into one <u>unless the owner intends to keep them separate</u>.  Even though this centuries-old principle developed initially as a title simplification device, it took root in the law of mortgages as well.  As applied in the mortgage setting, the theory holds that when a mortgagee's interest and a fee title become owned by the same person, the lesser estate, the mortgage, merges into the greater, the fee, and is extinguished <u>unless the holder intends a contrary result</u>.

Restatement (Third) of Property (Mortgages) § 8.5, comment a (1997) (emphasis supplied).


In rejecting Holden's merger argument, the <u>Holden</u> court first observed that the "statute does not explicitly provide whether the power of sale mortgage is extinguished or remains in effect as to intervening interests." <u>Id</u>. at *2.  It then concluded that long-standing and well-recognized exceptions to the common law merger doctrine prevented the FDIC's mortgage from merging into its legal title.  <u>Id</u>. at *4-6 (citing <u>Factors' & Traders' Ins. Co. v. Murphy</u>, 111 U.S. 738, 744 (1884) and <u>Stantons v. Thompson</u>, 49 N.H. 272, 279 (1870)).  That is, in the context of a foreclosure sale, a merger of interests does not occur when (as is the case here) it is contrary to the intention of the mortgagee, or when an intervening lien prevents the

18

entire legal and equitable interests from uniting in a single
entity.  Indeed, as the New Hampshire Supreme Court has
observed:

> [W]hen the estates of the mortgagee and mortgagor are
> united in the former, he has in equity an election to
> keep the mortgage title on foot, and that wherever it
> is for his interest by reason of some intervening
> title or other cause, that the mortgage should be
> upheld as a source of title, it will not at law be
> regarded as merged.
>
>                   * * *
>
> Indeed it may properly be said that when there is an
> intervening estate, there can be no merger from the
> mere union of the equitable and legal estates. . . .
> In fact, the doctrine of merger, springs from the fact
> that when the entire equitable and legal estates are
> united in the same person, there can be no occasion to
> keep them distinct, for ordinarily it could be of no
> use to the owner to keep up a charge upon an estate of
> which he was seized in fee simple, but if there is an
> outstanding, intervening title, the foundation for the
> merger does not exist, and as matter of law, it is so
> declared.

Stantons v. Thompson, 49 N.H. 272, 279 (1870) (emphasis

supplied) (citations omitted).  When, as here, an intervening

lien arises between the mortgagee's equitable interest and its

legal interest, there cannot be any merger of those interests.


The holding in Holden is entirely consistent with Stantons

and long-standing, firmly-established principles of New

Hampshire's common law.  It is also consistent with the

Restatement, which provides, quite unequivocally, that "the doctrine of merger does not apply to mortgages or affect the enforceability of a mortgage obligation."  Restatement (Third) of Property (Mortgages) § 8.5.  And, finally, it is entirely consistent with the language of RSA 479:26, II.  The bankruptcy court did not err in relying upon <u>Holden</u> in resolving the issues before it.

But, the Trustee argues, there is a point that the <u>Holden</u> court did not consider.  Even if Envoy's mortgage still exists, the amendment to RSA 479:26, II, and the legislative history of that amendment, evidence the legislature's intent to preclude a mortgagee in Envoy's position from "re-foreclosing" its mortgage.  Referring to the sparse legislative history of that amendment (which was, itself, only a small part of more substantive amendments to the foreclosure statute), the Trustee asserts that the New Hampshire legislature intended the three-word change to "clarif[y] the <u>ramifications</u> of failing to record the deed and affidavit within 60 days after the foreclosure sale with regard to intervening creditors."  Amended Analysis of Senate Bill No. 150, 1991 Session (document no. 2 at 63) (emphasis supplied).  In the Trustee's view, the word "ramifications" should be construed to mean "penalties" (rather than, say, "effects" or "consequences" or "results").  <u>See</u>

Trustee's Appellate Brief at 11 (asserting that the "amendment
to RSA 479:26, II sets forth the intent of the Legislature to
penalize ('ramifications') any lender who fails to comply with
the mandate."). Thus, says the Trustee, because the legislature
amended the statute to "clarify the ramifications" of a late-
filed foreclosure deed, it must necessarily have intended to
abrogate the common law and preclude the mortgagee from
exercising its rights under the mortgage (including the
statutory power of sale) against intervening lien holders.
Again, the court disagrees.

One might think that had the legislature intended such a
drastic departure from more than 150 years of well-established
common law, it would have done more than merely amend three
words in RSA 479:26, II. If, as the Trustee suggests, the
legislature intended to impose a novel "punishment" on
purchasers at foreclosure sales when the mortgagee records the
foreclosure deed in an untimely manner, it likely would have
included something beyond a vague statement in the legislative
history about intending to "clarify the ramifications" of a
late-filed foreclosure deed.

Because the mortgagee in this case (Envoy) was the high
bidder at the foreclosure sale, it is easy to lose sight of the

fact that often such purchasers are innocent third parties who
have little or no ability to ensure that the foreclosure deed is
recorded in a timely manner.  The Trustee's proposed
interpretation of the statute would not only prejudice such
third parties in a decidedly unfair and potentially confiscatory
manner, but it would afford intervening lienholders (like the
Trustee) an unjustified and unwarranted windfall.  Despite
having recorded a lien that they knew (or are charged with
knowing) was subordinate to the mortgage (subject to being
extinguished by the timely recording of the foreclosure deed),
that lien would nevertheless remain an encumbrance on the
property in the hands of any purchaser at foreclosure –
something that a purchaser might well have had neither reason to
expect nor the ability to prevent.  As the Holden court
observed, "a mortgagee's right to foreclose a mortgage is a
right to equitable relief . . . . [Consequently,] the element of
fairness must pervade the entire process."  Id. at *6.  The
windfall to which the Trustee suggests intervening lienholders
are entitled – particularly when such a windfall could be at the
expense of an innocent purchaser at foreclosure – is neither
fair nor equitable.

     Such an extraordinary consequence to the late filing of a
foreclosure deed would not only turn a century of New

Hampshire's common law of property on its head, but it would
also add an element of extraordinary uncertainty and
unpredictability to the foreclosure process.  Purchasers at
foreclosure sales could never be certain they were acquiring
clear title to the property, that is, title that is "free and
clear of all interests and encumbrances which do not have
priority over [the foreclosed] mortgage."  RSA 479:26, I.
Undoubtedly, that would adversely affect bids at foreclosure
sales and depress the selling prices, to the detriment of
homeowners and priority mortgagees alike.  That, in turn, could
impact lending institutions' willingness to make mortgage loans,
to the detriment of the economy as a whole.  The bankruptcy
court was correct in rejecting the Trustee's faulty construction
of RSA 479:26.


IV.   The Trustee's Motion to Certify.

Finally, the court turns to the Trustee's Motion to
Certify, by which the Trustee moves this court to certify to the
New Hampshire Supreme Court the following question of state law:

> whether N.H. RSA 479:26 permits a foreclosing
> mortgagee to reforeclose, if the foreclosing mortgagee
> does not record its foreclosure deed within sixty days
> and there is an intervening lien, prior to the date of
> recording, as set forth in RSA 479:26, II.

Motion to Certify (document no. 5) at 1.  The Trustee asserts
that certification is warranted because the New Hampshire
Supreme Court has yet to address the import of the 1992
legislative amendments to RSA 479:26, II.


    Certification to the New Hampshire Supreme Court may be
appropriate when the question presented is novel and the
governing state law on the issue is unsettled.  See Hungerford
v. Jones, 988 F. Supp. 22, 25 (D.N.H. 1997).  See generally N.H.
Sup. Ct. R. 34.  Whether it is appropriate to certify a question
to the state's highest court is left to this court's discretion.
See, e.g., Nieves v. Univ. of Puerto Rico, 7 F.3d 270, 275 (1st
Cir. 1993).  But, before exercising that discretion, this court
"must first undertake [its] own prediction of state law for [it]
may conclude that the course the state court would take is
reasonably clear."  Id. (citations and internal punctuation
omitted).  See also Moores v. Greenberg, 834 F.2d 1105, 1107 n.3
(1st Cir. 1987) (noting that even when the state law "signposts
are blurred, a federal court may assume that the state courts
would adopt the rule which, in its view, is supported by the
thrust of logic and authority").


    Here, the Holden court's construction of RSA 479:26, II,
and the legal significance of the 1992 amendments to that

statute, is entirely consistent with logic and a long history of New Hampshire precedent.  The bankruptcy court was correct to follow its rationale.  On the other hand, the Trustee's radical proposed construction of the statute is unsupported by reason or logic, and hinges on the interpretation of an ambiguous word in the statute's exceedingly sparse legislative history (i.e., "ramifications").  If embraced, that interpretation of the statute would not only afford some intervening lien holders an enormous windfall, but it would also seriously prejudice purchasers at foreclosure sales and priority secured creditors, as well as undermine confidence in the foreclosure process itself.  It is, in the court's view, highly unlikely that the New Hampshire Supreme Court would adopt the strained interpretation of the statute urged by the Trustee.  Consequently, certification of the proposed question to the New Hampshire Supreme Court would not be appropriate.

## Conclusion

For the reasons discussed, the bankruptcy court's order of June 28, 2016, is affirmed in all respects.  The Trustee's Motion to Certify to the New Hampshire Supreme Court (document no. 5) is denied.  The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

Steven J. McAuliffe
United States District Judge

March 20, 2017

cc:  Daniel C. Proctor, Esq.
     Lawrence M. Edelman, Esq.
     Michele E. Kenney, Esq.
     Geraldine L. Karonis, Esq.